In the Matter of The **MIDWESTERN COMPANIES, INC.,** Titan Energy Engineering, Inc., and Titan Energy, Inc., Debtors.

**JONES HOLDING COMPANY, INC.,** general partner for ethanol plants known as Clovis I; Roswell III; Iberia I and Iberia IV; **Fike Metal Products Corp.,** general partner of the ethanol plant known as Clovis II; **New Mexico Ethanol Producers 1983–1, Ltd.,** general partner of the ethanol plant known as Clovis V; **New Mexico Ethanol Producers 1983–B, Ltd.,** general partner of the ethanol plant known as Roswell II; and **New Mexico Ethanol Producers 1983–C, Ltd.,** general partner of the ethanol plant known as Clovis VIII, Movants,

v.

The **MIDWESTERN COMPANIES, INC.,** Titan Energy Engineering, Inc., and Titan Energy, Inc., Respondents.

Bankruptcy Nos. 84–01679–SW–11, 84–01666–SW–11 and 84–01663–SW–11.

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

Jan. 29, 1985.

Robert R. McQuain/James P. Rosenbloom, Boland & McQuain, Kansas City, Mo., for movants.

J. Van Oliver, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., Paul E. Berman/Michael R. Roser, Berman, DeLeve, Kuchan & Chapmen, Kansas City, Mo., for debtors.

ORDER DIRECTING RESPONDENTS TO SHOW CAUSE IN WRITING WITHIN 15 DAYS WHY THEIR "MOTION FOR LEAVE TO APPEAL PURSUANT TO BANKRUPTCY RULE 8003" SHOULD NOT BE TREATED AS A MOTION TO ALTER OR AMEND JUDGMENT AND WHY, SO TREATED, THE MOTION SHOULD NOT BE DENIED

DENNIS J. STEWART, Bankruptcy Judge.

On January 15, 1985, this court issued its "findings of fact, conclusions of law and final decree and judgment declaring certain ethanol plants and real property not to be property of the estate and accordingly to be without the jurisdiction of this court." On January 23, 1985, the respondents filed with the bankruptcy court a "motion for leave to appeal pursuant to Bankruptcy Rule 8003." The document thus filed with the bankruptcy court asserts several grounds of error in the court's judgment of January 15, 1985, and seeks leave to appeal it interlocutorily.

It would appear from the plain letter of the Bankruptcy Amendments and Federal Judgeship Act of 1984 that the procedures outlined in Rule 8003 may have been superseded by the provisions of section 158 which took effect on July 10, 1984.[1] Subsection (a) of that new section provides that:

"The District courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."

And subsection (c) of that new section provides that:

"An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules."

Thus, while Rule 8003 of the Rules of Bankruptcy Procedure contemplates the filing of a motion for interlocutory appeal with the bankruptcy court and its transmission to the district court only after an answer to it is filed by the adverse party,[2] it seems to have been superseded by the above quoted subsection (c) of section 158 which prescribes that interlocutory appeals from orders of bankruptcy courts "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." Generally, that procedure requires that the petition for permission to appeal be filed directly with the appellate court.[3]

Further, there can be little doubt that the order issued by this court on January 15, 1985, constituted a final, appealable order. It has long been held that a bankruptcy court order which "has the effect of definitely determining title to the property" as between the estate and a third party has the character of a final appealable order. 2 Collier on Bankruptcy para. 24.38, p. 791, n. 14 (1976). And the respondents have signified an intention to appeal it as such, filing a regular notice of appeal within the ten-day time limit prescribed by the procedural rules.

1. See section 115(a), P.L. 98–353, which, in substance, makes the jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 applicable to all cases pending on the date of enactment and all those filed thereafter.

2. Rule 8003(a) of the Rules of Bankruptcy Procedure refers to a "motion for leave to appeal under 28 U.S.C. section 1334(b) ..." which no

longer, under the Bankruptcy Amendments and Federal Judgeship Act of 1984, contains any reference to interlocutory appeals.

3. See Rule 5 of the Federal Rules of Appellate Procedure to the pertinent general effect that "(a)n appeal from an interlocutory order ... may be filed by filing a petition for permission to appeal with the *clerk of the court of appeals* ..." (Emphasis added.)

■ The bankruptcy court, however, is required to give the "motion for leave to appeal pursuant to Bankruptcy Rule 8003" some independent significance, which it cannot have, for the foregoing reasons, as a motion for interlocutory appeal. But, otherwise, "(a)ny motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label." 9 Moore's Federal Practice para. 204.12(1), pp. 4–67 (1983). The motion which has been filed by the respondents characterizes the court's order as erroneous in several material respects; hence, it appears that it would be appropriate for the court to treat it as a motion to alter or amend the judgment within the meaning of Rule 59(e) of the Federal Rules of Civil Procedure and Rule 9023 of the Rules of Bankruptcy Procedure.

■ So treated, however, it does not appear, without more, that the motion can be considered as meritorious. The initial description of error which is now urged by the debtors is that a management fee provided in some of the contracts is payable to a subsidiary of one of the debtors and that this court should therefore have found this to be a legal or equitable interest of the debtor within the meaning of section 541 of the Bankruptcy Code (which defines the bankruptcy estate to include all such interests). Ordinarily, however, subsidiary corporations are recognized as entities separate and apart from parent or other allied corporations. It is only after an evidentiary demonstration that two entities have the same debts and assets or that their affairs are inextricably intertwined that they can be considered as one and accordingly amenable to consolidation in bankruptcy proceedings. "(C)onsolidation of ... separate bankrupts may sometimes be appropriate, as when the affairs of an individual (or corporation) and a corporation ... are so intermingled that the court cannot separate their assets and liabilities (and) the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates (or entities)." Advisory Committee's Note to former Rule 117 of the Rules of Bankruptcy Procedure. And no evidentiary showing has been made in this action to justify treating the subsidiary's property rights as property rights of the debtor corporations. This contention is therefore without merit, without more.

It is next asserted by the debtors that "those management agreements require the payment of 30% of the gross revenues, after debt service, to (the subsidiary) which represents a net profits interest in three plants which under New Mexico law may constitute a real property interest."

Again, no evidence or other showing has been made to warrant any conclusion that the property rights of debtors' subsidiaries are also property of the debtors. Even so, it was the rights of the parties in the physical plants which had been leased to the debtor corporations which was the subject of the hearing of December 10, 1984, and it was only those rights which this court purported to adjudicate in the now-challenged order. There was no request by either party, written or otherwise, that the court determine every right of action which may accrue to the debtors or their subsidiaries on the basis of the sales agreements. These questions were not fairly presented to the court and are not ripe for adjudication at this time. This is especially so when, as the debtors themselves suggest and is further enlarged in the paragraphs which follow, the determination may engage state law to such an extent that bankruptcy court jurisdiction, in the wake of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and the Bankruptcy Amendments and Federal Judgeship Act of 1984 may be defeated.[3a]

---

**3a.** "Where the intangible consists of a chose in action, such as a debt owed the bankrupt or a contract claim, such intangible may be said to be in the constructive possession of the bankruptcy court so as to enable the court summarily to determine the rights of various claimants to the chose in action, *if the bankrupt remained the legal owner up to the time of the filing of the*

**102**

The debtors further contend that:

"the partnerships owe between $2,500,-000 and $3,000,000 per plant on promissory notes which have been defaulted upon and which payments were to have been secured by deeds of trust or security interests in the plants, which constitute property rights under section 541 of the Bankruptcy Code, and which may result in judgments against the Plant Owners and foreclosure actions to recover the plants for Titan Louisiana.

"That as to Titan Energy, Inc., those sales agreements reserve in favor of the Debtor Vendor's Liens and confessions of judgment to secure the repayment of the above-mentioned note obligations. Those Vendor's Liens and related rights constitute present property interests of Titan Energy, Inc., within the meaning of section 541 and provide ample jurisdictional nexus of the Bankruptcy Court over the Ethanol Plants."

In making its ruling that the title which the debtors had previously had in the ethanol plants passed to the plant owners, subject to a right of re-entry for condition broken, this court assumed that a vendor's lien, such as now is asserted by the debtors for the first time in these proceedings, was effective only in the absence of another form of security interest. "A vendor's lien is not necessarily based on an express agreement between the buyer and seller of real estate but it is an equitable security which arises from the mere fact that a vendee has received from his vendor the legal title to real estate for which he has not paid the full consideration agreed upon. It is said to come into existence independently of any express agreement to that effect at the time of the conveyance, and even regardless of the vendor's intention then to claim it *where no other security*

*has been given at the time of the sale."* Causer v. Wilmoth, 142 S.W.2d 777, 779 (Mo.App.1940) (Emphasis added.) And, given the usual broad definition of a security interest, to include "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation," see Black's Law Dictionary, p. 1217 (1979), it appeared that the right of re-entry was a more specific and narrowly defined form of security which was intended to be relied upon by the debtors. Thus, even if the vendor's lien is effective, the provisions of the applicable sales agreements circumscribe the manner in which it may be enforced to the right of re-entry for condition broken.[4] And, beyond this literal interpretation which seems compelled by the faces of the respective sales agreements, the bankruptcy court cannot, under its current jurisdictional strictures, go. If the debtors would now require the court to interpret these contracts according to some silent unspoken intention of the parties—on which no evidence has yet been offered—or to bring the properties back into the possession of the debtors because of default—a form of relief which has not yet been formally requested—a cause of action arising under state law may well be joined, one which, as noted above, seems to run afoul of the jurisdictional strictures of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., supra.* In terms of historical familiarity, what the bankruptcy court has done in the order which is now challenged by the debtors is to hold that, on the face of the sales agreements presented in the course of the hearing—which are, in reality, the only material evidence presented to the court, the plant owners have made a substantial adverse claim to the property. "An adverse claim is substantial if the evidence offered as a

*petition."* 2 Collier on Bankruptcy para. 23.05, p. 489 (1976) (Emphasis added.) In this case, however, the debtors did not remain the legal owners of the property up to the time of the filing of the petition. Further, under the Bankruptcy Amendments and Federal Judgeship Act of 1984, if the issue as to ownership of the contract right or other intangible arises under state law, it appears that the bankruptcy court,

under the principles set forth in the text of this memorandum, may not have jurisdiction.

4. Article XVII of the agreements on the Louisiana plants limits the duty of the buyers to surrender possession of the plants to the time when the seller's right of reentry accrues because of default, or cancellation or termination of the contract.

basis is sufficient, if uncontroverted, to establish the validity of a claim; but a claim is not to be deemed merely colorable as to give the bankruptcy court summary jurisdiction, if its validity depends upon disputed facts as to which there is a conflict of evidence as well as a controversy in matter of law. " 'It is now well settled that if there is a real and substantial controversy of law or fact as to property held adversely to a bankrupt—"a contested matter of right, involving some fair doubt and reasonable room for controversy"—the bankruptcy court is 'without jurisdiction' to adjudicate the matter, but the trustee (or debtor-in-possession) must have resort to a plenary suit.' " 2 Collier on Bankruptcy para. 23.07, pp. 526, 527 (1976). Accordingly, when the evidence demonstrates a substantial claim adverse to that of a trustee or debtor-in-possession—, i.e., when the evidence produced by the adverse claimant is sufficient to join a factual or legal issue— the bankruptcy court is ousted of jurisdiction. "If it be ascertained that a substantial claim exists as to property adversely held, even though it is probable that such claim can be defeated, the bankruptcy court must desist and proceed no further in the summary proceedings; a plenary suit is the only proper remedy." 2 Collier on Bankruptcy para. 23.07(3), p. 531 (1976). These limits on the jurisdiction of the bankruptcy court still exist under the Bankruptcy Amendments and Federal Judgeship Act of 1984, albeit under a slightly different nomenclature which simply places actions arising under state law outside the compass of federal bankruptcy court jurisdiction.[5] In this action, any claim which the debtors have to the property in question must arise from contract and therefore arises under state law. And, in fact, in an action such as that at bar, the new Act is even more strict and unremitting than the pre-1979 Bankruptcy Act, for the former Act lent recognition to consent jurisdiction as a basis for a counterclaim of a trustee or debtor-in-possession against a reclaiming creditor.[6] The current statute, however, eschews consent jurisdiction, charging the bankruptcy judge with the duty of determining his jurisdiction on his own initiative, if necessary.[7] Otherwise, as to the substantive perimeters of bankruptcy court jurisdiction, the current Act is precisely in line with the pre-1979 law and the entire range of bankruptcy court jurisdiction is accordingly predicated upon possession, actual or constructive, of the debtors' property. See section 1334(d), Title 28, United States Code. And property with respect to which a substantial adverse claim has been made has never been considered within the actual or constructive possession of the bankruptcy court.[8] This court therefore concludes that even if the debtors, as they now contend, have successfully raised factual issues concerning jurisdiction over the

5. "Northern Pipeline effectively held that certain private *state* law claims, when adjudicated within the federal system, must be decided by Article III courts." *Kalaris v. Donovan,* 697 F.2d 376, 386 (D.C.Cir.1983) (Emphasis in original.) "Bankruptcy judges may hear and determine all cases under title 11 and any or all proceedings arising under title 11 or arising in a case under title 11 ..." Section 157(b)(1), Title 28, United States Code.

6. "A reclamation proceeding is a common example of the situation where the summary power of the bankruptcy court is invoked. Consequently, in such a proceeding the claimant cannot be heard to object to the court's jurisdiction to determine summarily the claimant's rights or title." 2 Collier on Bankruptcy para. 23.08, p. 551 (1976). But cf. section 157(b)(3), Title 28, United States Code, the currently governing statute, which requires that "(t)he bankruptcy judge shall determine, on the *judge's own motion* or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." (Emphasis added.).

7. See note 6, *supra.*

8. "It has been said that 'Constructive possession occurs where the property (1) is in the physical possession of the bankrupt at the time of the filing of the petition but is not delivered by him to the receiver or trustee, or (2) is delivered to the receiver or the trustee but thereafter is wrongfully withdrawn from his custody, or (3) is in the hands of the bankrupt's bailee or agent, or (4) is held by some other person who makes no claim to it, or (5) is held by one who makes a claim which is *not substantial* and is colorable only.' " 2 Collier on Bankruptcy para. 23.05, pp. 480, 482, 483 (1976) (Emphasis added.)

ethanol plants, those plants, for that very reason, remain outside the jurisdiction of the bankruptcy court for the reason that they are outside its actual and constructive possession.

Further, such an action as the debtors now make motion to mount, to bring the ethanol plants to which they formerly purported to pass their title, into the bankruptcy court should obviously be brought in a state court of appropriate jurisdiction. This is so even though, under current section 157(c)(1), Title 28, United States Code, the bankruptcy court may transmit the case to the district court with recommended findings of fact, conclusions of law, and a proposed judgment. For such a course of action would likely to be futile when mandatory abstention would likely apply according to the provisions of section 1334(c)(2), Title 28, United States Code, and any question concerning the issue of mandatory abstention would likely be obviated by an exercise of permissive abstention under section 1334(c)(1) of the same title. Accordingly, it must be concluded that this court has gone as far as it can in determining that the ethanol plants are currently without its jurisdiction.

In this regard, the debtors, in the motion at bar, additionally fault the court for not determining a potential issue respecting whether the sales agreements are executory contracts so as to permit the debtors to reject them and bring the ethanol plants into the bankruptcy estates. But the court's ruling, to the effect that the sales agreements on their respective faces purport to have conveyed debtors' right, title and interest to the plant owners, is necessarily a ruling that, with respect to the passage of title, the contracts are not executory, but executed.

For the foregoing reasons, it is therefore

ORDERED that the respondents show cause in writing within 15 days of the date of entry of this order why their "motion for leave to appeal pursuant to Bankruptcy Rule 8003" should not be treated as a motion to alter or amend judgment and why, so treated, the motion should not be denied.