**In the Matter of James Wendell ALEXANDER and Norma Jean Alexander, Debtors.**

**CITIZENS STATE BANK OF NEVADA and Citizens National Bank of Fort Scott, Kansas, Movants**

**v.**

**James Wendell ALEXANDER and Norma Jean Alexander, Respondents.**

**Bankruptcy No. 83–03166–SW–W–11.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

March 22, 1985.

Gerald D. McBeth, Ewing, Carter, McBeth, Smith, Gosnell and Vickers, Nevada, Mo., for Citizens St. Bank of Nev.

Bryan C. Breckenridge, Russell, Brown, Bickel, Breckenridge and Breckenridge, Nevada, Mo., for Citizens Nat'l. Bank of Fort Scott.

Charles E. Fowler III, Jenkins and Jensen and Husch, Eppenberger, Donohue, Elson and Cornfeld, Kansas City, Mo., for respondents.

DENNIS J. STEWART, Bankruptcy Judge.

The movant secured creditors of the chapter 11 debtors have moved to dismiss the within chapter 11 proceedings on the grounds of delay prejudicial to creditors and of the debtors' inability to effectuate a plan of reorganization. See section 1112(b) of the Bankruptcy Code. The respective motions to dismiss were the subjects of a single hearing held in Joplin, Missouri, on January 11, 1985, whereupon the debtors appeared personally and by Charles E. Fowler III, Esquire, their counsel, and the movant Citizens State Bank of Nevada appeared by Gerald McBeth, Esquire, and the Citizens National Bank of Fort Scott appeared by Bryan Breckinridge, Esquire.

The material facts which were proven to the court in the course of the hearing on the motions to dismiss were that this proceeding has now been pending well in excess of a year and the debtors have only recently proposed the plan of reorganization which is now before the court; that a prior proposed plan was scrapped and abandoned by the debtors when weather conditions resulted in the loss of any hope that the debtors would harvest any appreciable amount of crops in the year 1984; that, consequently, the plan which is now proposed by the debtors would place a moratorium on payments to creditors for an additional year (until the end of 1985, when payments are proposed to be made from crops which are now being cultivated); that the debtors, although they originally asserted that it would be necessary to obtain credit in order to plant and cultivate their crops, now contend that they have been able to plant crops without the benefit of any financing; that, in the three years next

preceding the filing of the petition for relief under title 11 of the United States Code, the debtors have suffered losses in their farming operations; that the debtors nevertheless contend that, in the more distant past, they have regularly realized net sums from their farming operations which, if now realizable, would result in annual net income averages which would permit them to pay the creditors the sums annually required by the proposed plan which is currently before the court; that they further contend that the losses which have been suffered in recent years have been caused them by an unusual chain of disastrous weather which is now unlikely to repeat itself; and that they are experienced farmers in middle age who have farmed the land on which they now reside for years.

 The motions to dismiss which are now before the court were not filed until most of the inordinate pre-confirmation delay was a *fait accompli.*[1] The debtors have now proposed a plan of reorganization and the hearing on confirmation may be set after a ruling is handed down on the pending motions to dismiss. Accordingly, the court should not issue premature rulings on factual issues which should ordinarily be resolved at the hearing on confirmation of a chapter 11 plan, such as those which will determine the issue of whether the plan is feasible and therefore not likely to be followed by liquidation within the meaning of section 1129(a)(11) of the Bankruptcy Code or that of whether the plan has been proposed in good faith within the meaning of section 1129(a)(3) of the Bankruptcy Code.[2] Rather, at this juncture, the motion to dismiss should be granted only if it is clear as a matter of law that the debtors cannot achieve confirmation of their pending proposed plan of reorganization. Thus, if it can be said that the moratorium on payments of principal and interest which is proposed by the debtors in their currently proposed plan is, as a matter of law, impermissible, the motions to dismiss should be granted. It is the contention of the movants that the court should not permit the moratorium which is proposed by the debtors and that to permit such a moratorium would be to nullify the letter of section 1129(b)(2)(A) requiring that secured creditors, through a plan of reorganization, receive the value of their claims *as of the effective date of the plan.* This section has uniformly been construed to mean that secured creditors must receive interest for delay in enforcement of their rights.[3] This is a construction which would necessarily foreclose any possibility of a moratorium, which, by definition, would take away the duty to make payments of interest as well as those of principal.[4]

 But, inasmuch as, as is further enlarged upon below, the provisions of section 1129(b)(2)(A), as so construed and applied, seem to be in conflict with those of section 1129(a)(7) requiring only that a debtor in chapter 11 proceedings grant a creditor the equivalent of what that creditor would receive in straight liquidation

---

1. The debtors' petition for relief in these chapter 11 proceedings was filed on November 29, 1983. The motions to dismiss were filed on December 20, 1984.

2. It is asserted on the motion to dismiss that the debtors have not complied with the court's prior order to seek authorization of court before disposing of the proceeds of the minimal harvest allegedly achieved in 1984. If these allegations prove true, it may be the duty of the court to deny confirmation for lack of good faith within the requirement of section 1129(a)(3) of the Bankruptcy Code. But that issue should be heard in conjunction with the confirmation hearing.

3. "The Bankruptcy Courts have almost uniformly ruled that the proper method of providing . . . creditors with the equivalent of the value of their claim as of the effective date of the plan is to charge interest on the claim throughout the payment period." *Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647, 650 (11th Cir. 1983), and cases there cited.

4. In the text of this memorandum, "moratorium" is used in the sense of "a period during which an obligor has a *legal right* to delay meeting an obligation." Black's Law Dictionary 910 (5th ed. 1979) (Emphasis added.) Because the delay or suspension is based on a *right,* there would be no duty to provide payments of interest for the delay.

under chapter 7,[5] some doubt is reflected upon the movant's contentions. Further, a mortgagor's right to a temporary moratorium in payments to his mortgagee may be a matter of constitutional right. See *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). Therefore, in view of the not inconsiderable authority which indicates that decisions of constitutionality *vel non* should not be made by a non-Article-III court,[6] the bankruptcy court has determined that it should refer the issue, with recommended findings and conclusions, to the district court in accordance with section 157(c)(1), Title 28, United States Code. This procedure is particularly applicable under the facts of this case, in which the according of a property right to the debtor may be taking a property right from the creditor. And the current strictures on bankruptcy court jurisdiction do not admit of its resolving a substantial claim of property right by a creditor.[7]

**5.** This section provides that "[t]he court shall confirm a plan only if all of the following requirements are met: ... With respect to each class ... each holder of a claim or interest of such class ... has accepted the plan; or ... will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or ... if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secured such claims."

**6.** See, e.g., *In re Repair and Maintenance Parts Corp.,* 19 B.R. 575, 577 (Bkrtcy.N.D.Ill.1982), to the following effect: "Article III tenure and compensation protections were intended to give independence to those federal judges primarily charged with reviewing the constitutionality of laws passed by Congress or dealing with issues affecting fundamental rights of persons asserting unpopular causes. While such reviews and issues may arise in the bankruptcy courts, their resolution would be incidental to the court's usual functions ... [T]he final decisions on such questions remain with Article III courts."

### The Issues Which Are Ripe for Determination

■ The principal issue which is made by the evidence adduced in the hearing on the motions to dismiss is whether a bankruptcy court may lawfully permit a temporary and measured moratorium in payments to a creditor, secured as well as unsecured, *as part of a chapter 11 plan of reorganization.* As observed above, the preview of the feasibility of the debtors' plan of reorganization which is offered by the evidence on the pending motions is less than promising. But it is, at this juncture of the proceedings, not controlling. The question which is necessarily before the court on these motions to dismiss is whether the prospect of successful reorganization is so unpromising that the court cannot be warranted in permitting the case to proceed to a hearing on confirmation. In this case, the evidence presented to the effect that, in the recent past, the debtors have suffered nothing but voluminous losses because of

**7.** "(W)hen the evidence demonstrates a substantial claim adverse to that of a trustee or debtor-in-possession—i.e., when the evidence produced by the adverse claimant is sufficient to join a factual or legal issue—the bankruptcy court is ousted of jurisdiction. 'If it be ascertained that a substantial claim exists as to property adversely held, even though it is probable that such claim can be defeated, the bankruptcy court must desist and proceed no further in the summary proceedings; a plenary suit is the only proper remedy.' 2 Collier on Bankruptcy para. 23.07(3), p. 531 (1976). These limits on the jurisdiction of the bankruptcy court still exist under the Bankruptcy Amendments and Federal Judgeship Act of 1984, albeit under a slightly different nomenclature which simply places actions arising under state law outside the compass of federal bankruptcy court jurisdiction. ... And, in fact, ... the new Act is even more strict and unremitting than was the pre-1979 Bankruptcy Act, for the former Act lent recognition to consent jurisdiction as a basis for a counterclaim of a trustee or debtor-in-possession against a reclaiming creditor. The current statute, however, eschews consent jurisdiction, charging the bankruptcy judge with the duty of determining his jurisdiction on his own initiative, if necessary." Matter of *The Midwestern Companies,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code, 49 B.R. 98 (Bkrtcy.W.D.Mo.1985).

unusual circumstances of weather, is somewhat tempered by evidence to the effect that they had, in the more distant past, realized farm income which would sustain the plan now proposed by them.

But, because of the crop failure this year, the plan is necessarily predicated upon a moratorium in payments until next year's harvests are completed. When this additional year is added to the year which has now elapsed since the filing of the petition for relief, the total moratorium on payments may exceed two years.

■ It must be stated at the outset that this court agrees with the rule of *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984), to the effect that a pre-confirmation moratorium, made effective only by a debtor's refusal to make appropriate payments on secured debts even as he delays in the filing of any proposed plan of reorganization and which is thus involuntarily imposed on creditors through disregard of sections 361–363 of the Bankruptcy Code, is unlawful. See, e.g., *Matter of Cassavaugh*, 44 B.R. 726 (Bkrtcy.W.D.Mo.1984).

But may the bankruptcy court confirm a plan which includes a moratorium on payment to creditors as one of its essential features? Only if the answer to this question is in the affirmative may this court deny the pending motions to dismiss and continue processing this case toward confirmation. For, if the answer is in the negative, such processing would be useless inasmuch as it could not culminate in confirmation of the debtors' proposed plan.

■ In order to answer this question, it is incumbent upon the court to determine whether section 1129(a)(7), requiring only that a debtor in chapter 11 proceedings grant a creditor at least what that creditor would receive in chapter 7 proceedings, is to prevail over the seemingly contrary letter of section 1129(b)(2)(A) which would not permit any moratorium in payments to a secured creditor in chapter 11 proceedings even though such a moratorium may occur in chapter 7 proceedings while a trustee (or the secured creditor) is attempting to liquidate the collateral. Thus, it seems clear that the latter provision has the effect, according to virtually all the interpretations of it,[8] of compelling debtors in chapter 11 proceedings to pay more to secured creditors than those creditors would receive in chapter 7 proceedings. This extraction of greater payment is accomplished by means of the provision's ignoring the fact that, in chapter 7 proceedings, compensation (in the form of interest on the value of the collateral) is not paid on property which is not then producing income prior to its liquidation.[9] The situation is, of course, different in chapter 13 and other proceedings in which the necessary ingredient of regular income justifies the assumption that the property is income-producing. See, e.g., *Matter of Johnston*, 44 B.R. 667 (Bkrtcy.W.D.Mo.1984). But the chapter 11 debtor's duty to pay is measured not by what he would be required to pay in chapter 13 proceedings. It is what he would be required to pay in chapter 7 proceedings which is the explicit measure of the value required to be conferred on creditors in chapter 11 proceedings. And, generally speaking, in chapter 7 proceedings, although it is likely that collateral may be held by a trustee or by the secured creditor itself for many months until its ultimate liquidation, neither the debtor nor the chapter 7 estate would be required to pay interest or other compensation for this period of time. In farm debtor cases, in which the property is apt to have to be held for long

---

8. See note 3, *supra*.

9. Only if the property actually yields interest or income for the period prior to the sale is any interst paid in liquidation proceedings to the secured creditor. See *Littleton v. Kincaid,* 179 F.2d 848, 852 (4th Cir.1950). And, obviously, this rule can only be effective to the extent of interest or income actually earned. In chapter 11 proceedings, if, during the moratorium, the debtor actually produces income, the court may modify the moratorium so as to require full or partial payment to the creditor or creditors. Cf. *Wright v. Vinton Branch of Mountain Trust Bank,* 300 U.S. 440, 462, 463, 57 S.Ct. 556, 561, 562, 81 L.Ed. 736 (1937).

**116**

periods of time, either by the trustee or the secured creditor, before liquidation, it is painfully obvious that secured creditors must wait long periods of time for their value even as they receive no interim compensation.

Yet, section 1129(b)(2)(A), *supra,* as consistently applied in the decisions, rules out any moratorium in its demand for the continual payment of interest.[10] In being applied to this effect, section 1129(b)(2)(A), *supra,* appears directly to contradict section 1129(A)(7), *supra,* and to require that debtors pay creditors more in chapter 11 proceedings than in chapter 7 proceedings, in which no compensation is ordinarily paid for delay in the enforcement of the rights of secured creditors.

 The standard canons of statutory construction command a court to interpret the several statutes in a single legislative enactment as consistent with one another and as not contradictory.[11] And there is a construction of the statutes here in question which permits adherence to that canon. It would hold that section 1129(a)(7)'s requirement of payment of creditors "not less than" that amount which they would receive in straight liquidation is a necessary but not sufficient condition for confirmation of a plan; that the requirement of section 1129(b)(2)(A) is accordingly simply added to that of section 1129(a)(7), as is within the power of Congress to do; and that the requirement of section 1129(a)(7), within the letter of that subsection itself, is made subject to the election of a secured creditor, in most imaginable cases,[12] to be paid continual interest on the value of the collateral.[13] It should be mentioned that such a construction would appear to render the provisions of section 1129(a)(7) superfluous and without any independent significance, an interpretation which therefore seemingly violates the canon which requires that, if possible, every section of an enactment be accorded meaning and significance.[13a] But, more importantly, such a construction runs headlong into the constitutional principles announced nearly a half century ago by the Supreme Court of the United States in *Wright v. Vinton Branch of Mountain*

**10.** See note 3, *supra.*

**11.** "In the absence of a showing to the contrary, all laws are presumed to be consistent with each other. Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions. These rules are particularly applicable to statutes passed at or about the same time, or at the same session of the legislature, since it is not presumed that the same body of men would pass conflicting and incongruous acts." 73 Am.Jur.2d section 254, p. 425 (2d ed. 1974).

**12.** See note 5, *supra.* As there noted, section 1129(a)(7) actually provides that a creditor must receive at least as much in the chapter 11 proceedings as that creditor would have received in chapter 7 proceedings *or, in the alternative, if the creditor elects,* the value of his claim as of the effective date of the plan. "The effect of section 1111(b)(2) ... [is to grant] members of the secured creditors' class ... the right to receive over time cash payments equal to the allowed amount of their claims ... The cash payments ... need only have a present value equal to the value of the debtor's interest in the collateral which will be the value of the collat-

eral as determined by the court under section 206(a) less the amount of senior claims against the same collateral." 5 Collier on Bankruptcy para. 1111.02(5), pp. 1111–27, 1111–28 (1984). Generally, although § 1129(a)(7) purports to apply to "classes" of creditors, practicality makes its provisions applicable to individual secured creditors. *"Although section 1111(b)(1)(A)(i) speaks in terms of classes of claims, the only time that an electing class of secured claims will have more than one member is where a number of creditors hold claims on a parity one with the other which are secured by a lien of equal rank against the same property." Id.,* (3), p. 1111–25 (Emphasis added.)

**13.** See note 12, *supra.*

**13a.** If each secured creditor is to have the right to make the election described in § 1111(b)(2), then he must consent, in effect, to receive "not less than" he would receive in chapter 7 proceedings. But the general consent provision elsewhere contained in § 1129(a)(7) renders the "not less than" provision superfluous under such a construction. Nor can it be said that the "not less than" provision is meant to apply only to unsecured creditors when § 1129(a)(7) purports to apply to "each class," whether comprised of secured or unsecured creditors.

*Trust Bank, supra,* which held that a mortgagee's property rights were properly subject to a bankruptcy statute which permitted a moratorium on payments to it for up to a year and which otherwise restricted the mortgagee's rights in the property to recovery of the value of that property.[14] In holding that the statute which so provided did not result in a "taking" of the mortgagee's property rights within the meaning of the Fifth Amendment to the United States Constitution, the Court necessarily defined, for constitutional purposes, the outer limits of a mortgagee's interest in mortgaged property. This compels a conclusion that the Court must, at the same time, have defined some of the bankrupt's property interests to include the right to a properly conditioned moratorium as contained in the statute which was upheld (the Frazier-Lemke Act of 1935) and to not to have to pay the mortgagee, on account of the property itself, more than its value.

■ This court is well aware that the Frazier-Lemke Act has long ago fallen into desuetude and that recent decisions generally hold that property rights do not flow directly from the Constitution, but are conferred by statute, contract, or practice.[15] But those principles seem inapplicable when a decision of the Supreme Court has once defined the outer limits of the mortgagee's property rights. For, in so doing, the Court necessarily bestowed the remainder of the rights existing in mortgaged property, in light of the provisions of the Fifth Amendment, upon the mortgagor. In any item of property, there is but a finite quantum of rights which can only be distributed between the lienholders, on the one hand, and the mortgagees on the other. There is no "no-man's land" in which there exist no rights of either party; nor is there any area of overlapping rights. The rights of the mortgagee must be exclusive of those of the mortgagor and visa versa. What is not property of the mortgagee must be the property of the mortgagor.

■ Once, moreover, these rights have been bestowed and have vested under the pre-existing statutes, they cannot be reduced or removed by means of a subsequent statute which makes no provision for due process and just compensation. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 590, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935) ("It is the taking of substantive rights in specific property acquired ... prior to the act ... [which is] void."); *Rodrock v. Security Indus. Bank,* 642 F.2d 1193, 1198 (10th Cir.1981), affirmed on other grounds sub nom. *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) ("Congress may not under the bankruptcy [or any other] power completely take ... rights in specific property previously acquired ...") . Although it appears that the precise provisions of the Frazier-Lemke Act of 1935 were not in effect immediately prior to the effective date of the Bankruptcy Reform Act of 1978, the prior Act contained no provision which made it impossible for a bankrupt to effect a provision for a moratorium, with court approval, in reor-

---

14. Under the Frazier-Lemke Act of 1935, the three-year moratorium on foreclosure was accompanied by a provision that rents were not required to be paid "until the end of one year." "The clause providing that 'the first payment of such rental shall be made within one year' is obviously capable of either of two constructions: One, that the mortgagor may not be required by the court to pay before the close of the year. The other, that the court may not postpone the payment beyond one year. In view of the requirement of semi-annual rental, the latter seems to us more reasonable. We intimate no opinion as to the validity of this provision under the first construction. As here construed, the clause cannot be deemed arbitrary or unreasonable." *Wright v. Vinton Branch of Mountain Trust Bank,* 300 U.S. 440, 467, 57 S.Ct. 556, 564, 81 L.Ed.2d 736 (1937). "But it must be assumed that the mortgagor will not get the property for less than its actual value ... [and] [t]he ... payments prescribed by the Act are in accordance with the common practice in foreclosure proceedings where the property is in the hands of receivers." *Id.* at 468, 57 S.Ct. at 565.

15. "The [fifth] amendment protects property interests created and defined by independent sources such as statutes, legal rules, or mutually explicit understandings, but it does not create property interests of its own force." *Matter of Roberts,* 682 F.2d 105, 107 (3d Cir.1982).

ganization proceedings.[16] But the current provision for continual payment of interest, construed according to the above principles, eliminates any right or opportunity for a temporary moratorium in payments, conditioned so as to be consistent with the creditor's right to receive as much as he would receive in straight liquidation under chapter 7.

■ Accordingly, the bankruptcy court will recommend to the district court that section 1129(b)(2)(A) of the Bankruptcy Code, as applied to rule out any moratorium on payments of interest and principal after the effective date of the plan, is unconstitutional as a taking of the debtor's property rights as defined in *Wright v. Vinton Branch of Mountain Trust Bank, supra.* It will be further recommended that the district court permit the bankruptcy court to consider, in connection with the forthcoming issue of confirmation of the plan, the possibility of approving the moratorium proposed by the debtors. Accordingly, the bankruptcy court should be permitted to hear evidence in the course of the confirmation hearing as to whether, under current market conditions for the collateral, and those likely to exist in the foreseeable future, it could reasonably be expected to take at least a year to liquidate the property which constitutes the collateral. If so, the proposed moratorium may be granted and the plan containing it, if otherwise confirmable, confirmed. The moratorium may be later terminable or modifiable,

of course, on a later showing of materially changed conditions, just as was the moratorium in *Wright v. Vinton Branch of Mountain Trust Bank, supra.*[17]

### The Potential Nonconstitutional Ground for Decision

The result here proposed seems sufficiently fair and appropriate to the conditions now affecting farm debtors such as those in the case now at bar that it must be finally observed that it may be possible to achieve the same result on other than constitutional grounds. Thus, if section 1129(b)(2)(A) is construed to equate the value of the claim "as of the effective date of the plan" with the value which would be obtained by the secured creditor in straight liquidation, including any loss of value by reason of the necessary delay in liquidation of the collateral, then the same remedy could be made available without reaching the constitutional issue. The case authority tends now to hold that the value of the claim in chapter 11 proceedings for distribution purposes is liquidation value,[17a] but it does not yet appear to contain the refinement whereby the delay in liquidation would be considered in calculating that value. Therefore, because this construction is not so certain as definitely to avoid the constitutional question, this court believes that the better course is to refer these recommended findings and conclusions to the district court.

16. The predecessor to current chapter 11 reorganization proceedings, the former chapter XI arrangement under the Bankruptcy Act, technically did not provide for any composition of secured indebtedness. Its sole permissible purview was to modify unsecured debt. "Under Chapter XI only unsecured claims may be modified." *In re Peoples Loan & Investment Company of Fort Smith,* 410 F.2d 851, 856 (8th Cir. 1969). Nevertheless, the automatic stay in such proceedings was applicable as to the secured creditors. See former Rule 11-44 of the Rules of Bankruptcy Procedure. The stay could be kept in effect throughout the duration of the proceedings, thus giving the bankruptcy court some control over the timing of the curing of arrearages and the payment of the amounts due. There are no provisions in the former Act which would rule out the possibility that such control

might not result in a moratorium, particularly with respect to interest on arrearages and such interest as might constitute arrearages. Thus, it was within the realm of possibility that the automatic stay might be kept in effect even though such payments were not made.

17. See 300 U.S. at 462, 463, 57 S.Ct. at 561, 562.

17a. "If retention and use by the debtor of the collateral is proposed, there is generally no reason to assume for purposes of valuation that the collateral would be disposed of on a 'forced sale' basis." 3 Collier on Bankruptcy para. 506.04, p. 506–31 (15th ed. 1985). But "[f]actors militating toward a force sale might include high carrying costs for the property or that the property is perishable, vacant or inoperable." *Id.,* n. 37.

Nor can the moratorium be easily effected, without engaging constitutional principles, through the simple device of providing in the proposed plan of reorganization for a delay in the effective date of the plan. Such a tactic can only bring into focus and application the duty of the debtors to accord pre-confirmation adequate protection to the secured creditors under *In re American Mariner Industries, Inc., supra.*[18]

### Chapter 13 Proceedings Unaffected

■ None of the foregoing principles can or should affect the rule in chapter 13 proceedings that, under appropriate circumstances, the bankruptcy court can compel chapter 13 debtors to pay more in the chapter 13 proceedings than they would be required to pay in straight liquidation proceedings under chapter 7 of the Bankruptcy Code. This requirement can be, and has been, justified on the grounds that chapter 13 significantly expands the scope of the debtor's discharge over what is accorded in chapter 7 proceedings. See, e.g., *In re Estus,* 695 F.2d 311, 314 (8th Cir.1982). The same expanded scope of discharge is not available to individual debtors in chapter 11 proceedings.[19]

For all of the foregoing reasons, it is hereby

■ RECOMMENDED that the movants' motions to dismiss the within chapter 11 reorganization proceedings be denied for the reason that it is lawful for the debtors to have a chapter 11 plan of reorganization confirmed which provides for a moratorium in payments to both secured and unsecured creditors.

In accordance with the applicable law, the movants and respondent shall have 15 days from the date of filing of this report and recommendation in which to object to any proposed finding of fact contained therein or any recommended conclusion of law or the recommended action. The 15 days may be extended by the district judge,

---

**18.** It must be remembered that the moratorium which is herein described is not only a moratorium on payment of interest for delay in payment, but payment of contractual interest as well. If all that is done is to set back the effective date of the plan, those forms of interest continue to build and are often fatal to the reorganization of the debtor. The payment of interest on the value of the collateral, which is the rule imposed by *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984), as pre-confirmation adequate protection, is a wholly separate form of interest and *may* or may not go to reduce the other forms of interest which are meantime building. (If the creditor is oversecured and the arrearage is significant, it is obvious that the "loss of use" payments imposed by *American Mariner* may only diminish the additional interest charged for delay in payment of the payments in arrears and do little or nothing to deter the continual buildup of regular contract interest.) It is somewhat interesting to note that, in regard of this pre-confirmation interest, the *American Mariner* case observes that "the timing of adequate protection should take account of the usual time and expenses involved in repossession and sale of collateral." 734 F.2d at 435, n. 12. But, inasmuch as this does not touch upon the actual amount of the creditor's claim, but only the interim adequate protection of it, this provision does not engage the Fifth Amendment. As an incidental aside, this court does not believe the recent decision of our court of appeals in *In re Monni-*

*er Brothers,* 755 F.2d 1336 (8th Cir.1985), sweeps aside the requirements of the *American Mariner* case, *supra.* For the court in the *Monnier Brothers* case stated in pertinent part: "We need not decide whether in all cases a significant equity cushion would be enough to adequately protect a secured creditor, in part because, prior to the final order of confirmation, debtors have paid (or offered to pay) Prudential $75,000 toward unpaid interest."

But, under the recommended rule, even the pre-confirmation adequate protection interest payments may, in an appropriate case, be abandoned after confirmation in instances when it is demonstrated that the secured creditor would not receive payment of any kind before liquidation in the average time demonstrated by current market conditions. This is only appropriate when the impetus to achieve confirmation of a plan, rather than indefinitely delay the filing of a proposed plan and a confirmation hearing, is the proper goal to strive for during the pre-confirmation period. The rule of *American Mariner Industries, Inc., supra,* has a very salutary effect in this regard.

**19.** Individual debtors in chapter 11 proceedings are subject to the provisions of section 523 of the Bankruptcy Code, just as are debtors in chapter 7 proceedings. But chapter 13 debtors have at their disposal the much less arduous provisions of section 1328, which even abrogates most of the species for denial of discharge contained in section 727.

in his discretion, for good cause demonstrated in writing during the same 15 days. If an objection to the report and recommendation is filed, the district court shall, under the provisions of section 157(c)(1), Title 28, United States Code, consider the bankruptcy judge's proposed findings and conclusions and review de novo those matters to which any party has timely and specifically objected.